[No. 6299.]

## MESSENGER v. THE GERMAN AMERICAN INSURANCE COMPANY.

1. **Contracts—Construction**—In interpreting the words of a writing, the court should put itself in the place of the parties contracting, and take into view all the circumstances surrounding them at the time of the transaction.—(453)

2. **Insurance Policy—Construction**—A policy of insurance is intended as a contract of indemnity, and will, if the words are susceptible of it, receive a construction effectuating this intention.—(453)

3. **Evidence — Parol to Explain Writing —** The defendant issued a policy of insurance to the amount of $1,400.00 upon

plaintiff's stock of merchandise, and $100.00 upon his office and storeroom furniture, specifically describing the articles, "all while contained in" a certain store building, the street and number of which were set down. Immediately following this was a printed provision that "This policy shall cover all merchandise and goods * * * while located in above described building, vaults, vestibules, under sidewalk or upon sidewalks, in yard, on platform, in rear and alley adjoining the above described building." In an action upon this policy, the plaintiff demanded the value of agricultural machinery stored in a vacant lot on the opposite side of the street from the store building. It appearing that the plaintiff had no yard immediately adjacent to the store building, it was held admissible to show that he had for many years used the vacant lot in question as a yard, and place for the storage of agricultural machines and machinery; that defendant had insured plaintiff during all this time; that defendant's agents who wrote and delivered the policies listed the property kept in the yard as insured under such policies, and recognized the vacant lot as the "yard" mentioned in the policy; that everything which the plaintiff possessed at the store building was contained within it; that upon the vacant lot were threshers and engines, which were necessarily left out-of-doors at all times, and that the defendant knew this; that upon the issuance of the policies sued upon, and all precedent policies, the plaintiff had pointed out to defendant's agents the machines and machinery in the vacant lot as to be insured; and that the policy was delivered with the express agreement that the property in the vacant lot was insured under it.—(454-456)

4. **Words and Phrases** — "Adjoining" construed to import "near," "close by," "neighboring," or "not far from."—(456)

5. **Appeals — Objections Not Taken Below**—Objections to a replication as setting up a new cause of action will not be considered, where it does not appear that objection to the pleading upon this ground was urged in the court below.—(456)

*Error to Denver District Court*—Hon. Harry C. Riddle, Judge.

Mr. John R. Smith, and Mr. H. B. Woods, for plaintiff in error.

Mr. Sylvester G. Williams, for defendant in error.

(29)

Mr. Justice Gabbert delivered the opinion of the court.

Messenger brought suit against The German American Insurance Company to recover the value of merchandise destroyed by fire, which he claimed was covered by a policy of insurance issued by the company. Judgment was rendered for the defendant, from which the plaintiff appealed. We cannot entertain the appeal for want of jurisdiction, but by virtue of the provisions of the Civil Code, § 388a, the insurance company having entered an appearance, we have directed that the cause be entered as pending on error, and will consider it accordingly.

The policy insured plaintiff against loss by fire on "the following described property while located and contained as described herein, and not elsewhere, to-wit:" The property insured is described on a typewritten slip (attached to the policy) as follows:

"$1400. on all his stock of merchandise, chiefly agricultural implements, engines and supplies, their equipments and extra parts of all kinds and descriptions, knocked down or set up, and all other merchandise kept by him, including boxes and packings for and containing same, and packing materials, his own or held by him in trust or on commission, or on storage, or for repair, or sold but not delivered, or for which he may be legally liable;" and

"$100. on his office and store-room furniture and fixtures of all kinds and descriptions, including advertising materials, circulars, catalogues, cuts, counters, shelving, show-cases, typewriters, safes, carpets, scales, trucks, linoleums, office stationary, and supplies, cash registers, letter files and presses, signs and awnings in and upon building, and on such betterments and improvements to the building as may have been made by the assured (lessee) and recog-

nized by the lessor in the lease as being the property of the assured, all while contained in the two story and basement composition roofed brick building and additions, adjoining and communicating, situate No. 1710 (Map No. 1712) Fifteenth Street, Denver, Colorado, occupied for mercantile purposes.''

Immediately following this description of the property insured and on the same slip are several printed provisions, among which is the following: ''This policy shall cover all merchandise and goods with their spare parts as described, while located in above described building, vaults, show cases, windows, vestibules, under sidewalks, or upon sidewalks, in yard, on platforms in rear and alley adjoining above described building, and in railroad cars on tracks immediately adjacent thereto.''

The property ''in yard'' consisted of agricultural implements. That destroyed was a grain separator and attachments. It developed at the trial that this property when burned was located on a vacant lot in a block across the street. The trial court held that it was not included in the policy. Counsel for plaintiff then offered to prove that for several years Messenger had his place of business opposite and down Wynkoop street, from 1710 Fifteenth street; that in connection with that place of business he had for many years used as a yard the vacant ground upon which the property destroyed was located; that when he moved to 1710 Fifteenth street he continued to use the same ground for the same purpose; that he had been insured with the defendant company during these periods; that the latter's agents who took and wrote the policies and delivered them to him, listed the property in the yard as being insured under such policies and recognized that the vacant ground where the property was located was the place where his property insured ''in

yard" was stored; that all he had at 1710 Fifteenth street was the building; and that he had nothing to do with any ground immediately connected therewith; that his insured property "in yard" consisted mostly of threshers and engines, which had to stand out doors at all times on the vacant ground where the property was destroyed, and that the company knew it.

He further offered to prove that at the time of the issuance of the policy sued upon and all precedent policies issued by the same company, and from time to time, the plaintiff had pointed out to the agents of the defendant the property in yard where that destroyed was located as being the property which he desired to insure. Also, that the character of property "in yard" could not be stored or contained in a building such as stood at 1710 Fifteenth street, and that all these matters were communicated to and known by the defendant company at the time it issued the policy in suit.

He also offered to prove that this policy was delivered to plaintiff by the defendant with the express understanding and agreement that the property located in the yard referred to was insured under it. These offers were refused.

According to the offers made by plaintiff, the intention of the parties was to insure the property destroyed when located at the place it was burned. The plaintiff paid the premium for the purpose of effecting such insurance, and the company gave him to understand that it was insured when located at that place. In such circumstances it should be required to comply with its contract of indemnity, unless there is some reason in law which relieves it. The only defense interposed is, that the property when burned was located elsewhere than at the place described in the policy; that is to say, on ground

which was not embraced in the description in the policy under the designation "in yard." The question then presented is, whether or not the facts and circumstances which the plaintiff offered to prove were admissible for the purpose of aiding in ascertaining what place was meant by the expression "in yard" in the policy.

The contract of fire insurance is one of indemnity, and this well-established fact is the source of several important doctrines in the law of fire insurance, among which is that when a loss occurs it will be given that construction of which it is susceptible, which will make it one, in fact, and hence it follows, that, like all other contracts, it must receive that construction which is most probable and natural under the circumstances, so as to attain the object which the parties to it had in contemplation in making it.— *Hewitt v. The Watertown Fire Insurance Co.,* 55 Iowa 323. In construing a contract the first point to ascertain is, what the parties meant, understood and intended from the words employed, and as an aid in this respect, the situation of the parties, and the facts and circumstances surrounding the transaction at the time of the execution of the contract, as also, its subject-matter and the object of the parties in making it may be taken into consideration.—*St. L. Co. v. Tierney,* 5 Colo. 582; *Colo. F. & I. Co. v. Pryor,* 25 Colo. 540.

As tersely stated by Judge Sanborn, in *Tillitt v. Mann,* 104 Fed. 421:

"The primary rules for the construction of contracts are, that the court may put itself in the place of the contracting parties, and then, in view of all the facts and circumstances surrounding them at the time of the execution of the instrument, consider what they intended by the terms of their agreement, and that when the intention is manifest, it will con-

trol in the interpretation of the instrument, regardless of inapt expressions and technical rules of construction.''

In *McKeesport M. Co. v. The Ben Franklin Ins. Co.*, 173 Pa. St. 53, in speaking of rules applicable to the construction of policies of insurance, it was held (quoting from the syllabus): ''The circumstances surrounding the making of the contract and affecting the subject to which it relates form a sort of context that may properly be resorted to for aid in determining the meaning of the words and provisions of the contract.''

From an inspection of the policy itself, it appears that the major portion of the insurance was upon a stock of merchandise, chiefly agricultural implements. By the terms of the policy it was contemplated that some of this property would not be located in the building mentioned. The description of the location of this character of property was embraced in a printed form no doubt usually employed by the company in insuring property where part of it is located elsewhere than in a specific structure; a stock description, so to speak, employed in such circumstances, chosen by the company, and it should, therefore, be construed, if practicable, so as to cover the property intended to be insured.

The property described in the second clause of the slip attached to the policy was insured while contained in the building specified. That described in the first clause of the slip was also insured while contained in that building, and in addition, when located in specified places. Each of these exceptions to the requirement that the property was only insured while contained in the building mentioned, was embraced in the printed portion of the policy. One of these exceptions was ''in yard.''

From the facts and circumstances which plain-

tiff offered to prove it was apparent that he had a
yard where he kept property of the kind described
in the first clause describing property insured at the
time the policy in suit was issued. The purpose on
his part was to insure it when located thereon. The
intent of the company was to insure it at that place.
Unless it was, in fact, insured, plaintiff performed a
useless act in taking out the policy in so far as it
described property which was to be insured "in
yard," and the insurance company received a pre-
mium for which it incurred no obligation and re-
turned nothing. The property of the character
under consideration constituted the principal part of
the merchandise in which plaintiff dealt, and which
he kept on hand. He had no yard with which the
building he occupied as an office as described in the
policy was directly connected. The company knew
this, and also knew where the yard in which he did
keep the agricultural implements was situate. It
listed them as part of the property insured, and en-
gaged to insure them.

The exceptions to the requirements that the
property was only insured while contained in the
building mentioned, are sufficiently specific from
which it can be readily ascertained from the policy
itself what vaults, show-cases, windows, vestibules,
sidewalks, platforms and cars were meant; but this
is not true with respect to the yard. It might be in
the rear, or on either side of the building, or it might
be separated from it by another structure or fence,
or there might be no yard whatever in connection
with the property, and yet it is apparent from the
facts and circumstances that plaintiff had a yard
where he continuously kept property of the kind
described in the policy, and that it was the intention
of both parties to insure the property therein. From
the language employed in the policy the most that

can be claimed for it, with respect to the yard, is, that it was a yard adjoining the building, but this does not necessarily mean adjoining to or on, but, according to the circumstances, may be intended to denote that to which it refers as being ''near,'' ''close by,'' ''neighboring,'' or ''not far from.'' Under such description, the only way to definitely determine the location of the yard mentioned, or what ground was intended to be embraced under that designation in the policy, is to ascertain from the facts and circumstances surrounding the transaction what ground plaintiff was using outside the building specified, upon which to store his agricultural implements at the time they were listed by the agents of the company and the policy in suit was issued. Following this course, enables us to ascertain what ground was meant by the term ''in yard,'' and construing the yard mentioned in the policy as the one which plaintiff was using when the company issued its policy, results in giving the contract a construction which is perfectly natural and probable, effectuates the object the parties had in contemplation in making it and does no violence to any language employed in the policy, because it is only by resorting to the circumstances connected with and surrounding the transaction that the intent of the parties with respect to the location of the yard can be determined.

It is contended on behalf of defendant that the replication filed by plaintiff to its answer under which it is assumed plaintiff regarded the offers made as competent, was a departure from the cause of action stated in the complaint, and for this reason the offers were properly rejected. It is not necessary to determine this question. The record does not disclose that any objection was made to the replication on that ground. An objection that a replication was a departure from the cause of action

originally pleaded or introduced a new cause of action, will not be considered on review, where it does not appear that any objection was made or exception taken to the replication for that reason.— *King v. Rea*, 13 Colo. 69.

The judgment of the district court is reversed and the cause remanded for further proceedings in accordance with the views expressed in this opinion.

*Reversed and remanded.*

Decision *en banc.*

Mr. JUSTICE WHITE dissents.

Mr. JUSTICE HILL not participating.