Cunningham, P. J.,
rendered the opinoin of the court.
Plaintiff and defendant entered into' a contract whereby the latter became an employe of the former as a salesman. The plaintiff corporation was engaged in selling teas, coffees, and other culinary articles, from wagons driven by its employes over well established trade routes in this state. ' The sole question presented for our consideration is as to the validity of a certain paragraph in the written contract entered into by the parties, which reads as follows:
“Party of the second part (defendant in error and defendant below) further agrees that he will not at any time *495 while in the employ of the party of the first part, nor within a period of twelve months after leaving the services of the party of the first part, for any cause, for himself or any other person, persons or company, solicit or take orders from, or deliver orders for teas, coffees, baking powder, extracts, spices, cocoa, or other merchandise to any of the customers of the party of the first part, and especially agrees not to interfere with the trade or business of the party of the first part as now transacted or carried on with its customers in the territory in which the party of the second part has been working.
“Party of the second part further agrees that he will not directly or indirectly, through himself or others, take away or attempt to divert any of the custom:, business or patronage of the party of the first part with its customers in said territory within twelve months after leaving.
“Party of the second part further agrees, as a condition precedent, that he will not engage for himself or any other person, persons or company in the tea and coffee business, nor will he offer for sale any teas, coffees, baking powder, extracts, spices, cocoa or other merchandise during the life of this contract, nor during a period of twelve months after leaving the employ of the first party, for' any cause, whether before or after the termination of this contract, in che cities of Denver, Longmont, Lafayette, Louisville or Erie.”
We have italicized what we understand to' be tlhe phrase which has occasioned the dispute in this case. The aforesaid contract was dated September 15th, 1913, and provided that it might be terminated by either party on giving the other two weeks’ notice. The contract was terminated on the 10th day of January, 1914, and thereupon,, according to the allegations of plaintiff’s bill, the defendant engaged in the business of selling and delivering orders for goods of the same general character as those referred to in the contract and to the customers of plaintiff on its established trade routes. The trial court sustained a general demurrer to plaintiff’s bill, for the reason that in the opinion of the court “the restriction *496 against soliciting for tea, etc., ‘or other merchandise,’ and in forbidding defendant to offer for sale teas, etc., ‘or other merchandise,’ is unreasonable, because going beyond what is necessary for the protection of the plaintiff, and the contract being unreasonable, in that respect, cannot be enforced in equity.”
At the time of sustaining defendant’s demurrer to the bill the trial judge further stated that “if the contract contained the words ‘of .a similar nature,’ as stated in the complaint, it would not be open to. this objection,” referring to the objections set forth in that portion of the court’s remarks which we have quoted. Thus it' will be seen there is left for our determination but a single question, viz.: Is the contract in question, by reason of the clause which we have already quoted from it, vicious for the reason stated by the trial court ? This question we think must be answered in the negative.
“A contract must be construed as a whole, effect being given to all its parts and provisions when that can be done without working an injustice to either party, and when doubt exists and the contract is. susceptible of two constructions, the one working- an injustice and'the other consistent with the rights of both parties, the one which upholds the rights, of the parties should be adopted.” C., B. & Q. R. Co. v. Provolt, 42 Colo. 103, 93 Pac. 1126, 16 L. R. A. (N. S.) 587; Chicago, R. I. & P. Ry. Co. v. Denver & Rio. Grande R. Co., 143 U. S. 596, 12 Sup. Ct. 479, 36 L. Ed. 277; Parsons on Contracts (9th ed.) vol. 2, p 661 et seq.; Page on Contracts (1905) §§ 1120, 1121; Beach on Contracts (1896) vol. 1, §§ 708, 709., 717.
“The primary rules for the construction of contracts are that' the court may put 'himself in the place of the contracting parties, and then in view of all the facts and circumstances surrounding them at the time of the execution of the instrument, consider what they intended by the terms of their agreement, and that when the intention is manifest it will control *497 in the. interpretation of the instrument, regardless of inapt expressions and technical rules of construction.” — Tillitt v. Man, 104 Fed. 421, 43 C. C. A. 67; Messenger v. German American Ins. Co., 47 Colo. 448, 107 Pac. 643; Parsons on Contracts (9th Ed.) vol. 2, p. 655; Page on Contracts, § 1123; Beach'on Contracts, §§ 712, 719.
[4] “The circumstances surrounding the making of the contract and affecting the subject to which it relates form a sort of context that may properly be resorted to- * * * in determining the meaning of the words and provisions of the contract.” — McKeesport M. Co. v. Ben Frankin Ins. Co., 173 Pa. St. 53, 34 Atl. 16, quoted with approval in Messenger v. German Am. Ins. C.01, supra; Farrell v. Garfield M. M. & S. Co., 49 Colo. 159, in Pac. 839; Fearnley v. Fearnley, 44 Colo. 417, 98 Pac. 819; Page on Contracts, § 1106; Beach on Contracts, §711.
Considering the contract before us in its entirety, it is quite apparent that the object and purpose of the contract was to restrain the defendant from quitting the employ of the plaintiff, and thereafter, on his own behalf, or as the salesman for another, to avail himself of the advantage of acquaintances he had made with plaintiff’s customers while in the employ of plaintiff, and- thus divert from plaintiff trade which it ihad built up. The recitals in the contract make its. object and purpose perfectly apparent. In part they read as follows:
“Whereas, said party of the second part desires to enter the employ of the party of the first part, and by virtue of such employment will be enabled to discover and acquire full knowledge of the methods used by the party of the first part in conducting its business in the buying, selling, testing, keeping and distributing teas, * * * and other merchandise * * * and will' necessarily become acquainted with the customers and residences along and in such territory (commonly known as trade or delivery routes) as may be entrusted to him from time to time.
*498 “Now, therefore, in consideration of the premises and of the mutual covenants and agreements 'herein contained the parties hereto covenant and agree as follows:” etc.
It is proper in the interterpretation of deeds or written agreements toi look to the recitals thereof. These sometimes have great influence in the interpretation of the other parts of the instrument. — Broom’s Legal Maxims (1900), p. 428; Parsons on Contracts (9th Ed.), vol. 2, p-. 659; Beach on Contracts, sec. 711.
Another wholesome rule of construction requires courts to construe the words of parties so as to- effectuate their deeds and contracts, and not to destroy them, for contracts should be supported rather than defeated. — Parsons on Contracts, 659 ; Page on Contracts, secs. 1120 and 1121; Bea-ch on Contracts, secs. 708, 709 and. 717; Broom’s Legal Maxims (1900), p-. 398.
“Where there is roo-mi for it, the court will give a rational and equitable interpretation, which, though neither necessary nor obvious, has the advantage of being just and legal, and supposes a lawful contract which the parties may fairly be regarded as having made.” — -Parsons on Contracts, p. 661; St. Louis & Denver Land & Mining Co. v. Tierney, 5 Colo. 582; Wyatt v. Larimer & Weld Irrigation Company, 18 Colo. 298, 33 Pac. 144, 36 Am. St. 280.
Thus far our discission of the contract has proceeded upon the theory that the same -was rendered ambiguous or of doubtful validity by reason of the phrase, “or other merchandise,” which we have italicized in our quotation from the contract. There is abundant authority supporting a contrary view.
“The court will restrict the meaning of general words by more specific and particular descriptions of the subject-matter to- which they are to apply. Thus general words- following particular o-r specific terms are restricted in meaning to tho-se things or matters which are of the same kind as tho-se first mentioned.” — 9 Cyc. 584-585.
*499 To give to the phrase “and other merchandise” the broad meaning claimed for it by the defendant would be to invest it with power by which it might defeat what seems to 'have been the main purpose of the contract. This rule of construction will not ordinarily be applied where by so doing the contract is destroyed and the purpose and object of the parties to it thwarted.
“It is a general rule, that whensoever the words of a deed, or of the parties without deed, may have a double intendment, and the one standeth with law and right and the other is wrongful and against law, the intendment that standeth with law shall be taken.” — Coke, on Littleton, 42, 183; Archibald v. Thomas, 3 Cowen 284; Riley’s Admrs. v. Vanhouten, 4 How. (Miss.) 428; Many v. Beekman Iron Co., 9 Paige 188.
“Where there are recitals of particular claims or considerations, followed by general words of release, the general words shall be restrained by the particular recital. Thus, if a man should receive ten pounds and give a receipt for this sum, and thereby acquit and release the person of all actions, debts, duties, and. demands, nothing would be released but the ten pounds, because the last words must be limited by those foregoing.” — 2 Roll. Abr. 409; Paylor v. Homersham, 4 M. & S. 426; Lyman v. Clark, 9 Mass. 234; Rich v. Lord, 18 Pick. 322, at 325; Jackson v. Stackhouse, 1 Cowen 122, 13 Am. Dec. 514; Bellamy v. Bellamy’s Admrs., 6 Fla. at p. 107.
Where, in a statute,, general words follow particular ones, the rule is to construe them as applicable to subjects ejusdem generis, and we know of no reason why the rule as applied to' statutes, may not be with equal propriety applied to- the interpretation of contracts.
“According to Lord Bacon, ‘all words, whether they be in deeds or statutes, if they be general and not express and precise, shall be restrained into the fitness of the matter and the person.’ ” — 'Beach on Contracts, note to* .page 862.
*500 “As was well stated by Black, C. J., in Sharpless v. Philadelphia, 21 Pa. St. 161, ‘it is a universal rule of construction, founded in the clearest reason, that general words in any instrument are strengthened by exceptions and weakened by enumeration.’ ” — Wisconsin Central R. R. Co. v. Taylor County 52 Wis. at p. 90, 8 N. W. 833.
No- contention appears to have arisen or been made as to the legality of the contract here in question, aside from that which we have already discussed, and the terms both as to time and territory embraced seem eminently reasonable.
For authority on the question of the enforcibility of contracts of the character here under consideration see Barrows v. McMurtry Mfg. Co., 54 Colo. 432, 131 .Pac. 430, and Freudenthal v. Espey, 45 Colo. 488, 102 Pac. 280, 26 L. R. A. (N. S.) 961.
Judgment reversed and the case remanded for further proceedings in conformity with the views herein expressed.

Reversed and Remanded.